UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE STAPLES,

   Plaintiff,           Hon. Janet T. Neff

v.                 Case No. 1:09 CV 13

KELLY WHITNEY, et al.,

   Defendants.

_____/

## REPORT AND RECOMMENDATION

   This matter is before the Court on <u>Defendants' Motion to Dismiss</u>. (Dkt. #17). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and Plaintiff's action be **dismissed**.

## BACKGROUND

   The following allegations are contained in Plaintiff's complaint. (Dkt. #1). On November 12, 2008, Plaintiff informed prison officials that he needed the services of a notary public for some legal filings he was preparing. Defendant Thomas later attempted to perform the requested notary services, but "botched" the attempt and "refused to correct it."

   On November 24, 2008, Plaintiff informed Defendant Whitney that he again needed the services of a notary public. Whitney informed Plaintiff that because the Resident Unit Manager was on vacation it would be "a whole week" before such services could be performed. The following day, Defendant Whitney told Plaintiff that staff was "busy with the holidays," so he "should just wait until

next week." On November 26, 2008, Plaintiff "kicked [his] door and demanded access to the court!" In response, Defendant Whitney began kicking the door to Plaintiff's cell. Whitney threatened to place Plaintiff in segregation indefinitely and "not mail [his] legal work for a month." Whitney also instructed "his officers" to harass and threaten Plaintiff to "get inside [his] head." Plaintiff was "rushed off to the emergency ward that day" as a result of the mental and physical harm he suffered.

Plaintiff initiated this action on January 7, 2009, against Kelly Whitney, Jason Thomas, and Jamie Bennett, employees of the Michigan Department of Corrections. Plaintiff asserts that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment, as well as his First Amendment right of access to the courts. Plaintiff seeks monetary damages in excess of two-hundred thousand dollars. Defendants now move to dismiss Plaintiff's complaint.

## **ANALYSIS**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail

> necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural

rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

Michigan Department of Corrections Policy Directive 03.02.130 (effective July 9, 2007) articulates the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P-Q. The policy provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ W.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to

Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The total grievance process from the filing of the Step I grievance to providing a response at Step III "shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." *Id.* at ¶ S.

Defendants assert that Plaintiff pursued only one grievance concerning the incident giving rise to the present action. On November 14, 2008, Plaintiff submitted Grievance ECF-08-11-2114-27b.[1] (Dkt. #18, Exhibit B). In this grievance, Plaintiff asserted that Defendant Thomas denied him access to the courts by "refusing to give proper notary work." Plaintiff unsuccessfully pursued the matter through all three steps of the grievance process.

Defendants assert that Plaintiff's complaint must be dismissed because his grievance was denied for failure to comply with the relevant procedural requirements. Specifically, Defendants assert that Plaintiff's grievance was denied because he failed to "attempt to resolve the issue prior to filing a grievance," as required by MDOC policy. *See* Michigan Department of Corrections Policy Directive 03.02.130 ¶ P (effective July 9, 2007). Because Defendants have not submitted the Step I grievance response, they have failed to establish that Plaintiff's grievance was denied at Step I for failure to comply with this procedural rule. The Court recognizes that Plaintiff's grievance was rejected at Step II for failure to comply with the aforementioned procedural requirement.

---

[1] Plaintiff offers no evidence refuting Defendants' assertions with respect to this particular grievance. In response to the present motion, Plaintiff has also submitted a copy of a separate Step I grievance he apparently filed against Defendant Whitney alleging that Whitney subjected him to mental distress, degradation, and humiliation. The Court notes, however, that Plaintiff did not submit this grievance until January 28, 2009, three weeks *after* he initiated the present lawsuit. Such does not constitute proper exhaustion of administrative remedies. *See Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (recognizing that prisoners must exhaust administrative remedies *before* initiating legal action); *LaFountain v. Martin*, 2009 WL 1546376 at *2 (6th Cir., June 3, 2009) ("[p]rior to filing a lawsuit, a prisoner must first properly exhaust his available administrative remedies") (citations omitted). Thus, the Court finds that this grievance fails to exhaust any claim articulated in Plaintiff's complaint.

The Step III response, however, suggests that Plaintiff's grievance was rejected for a different reason. As indicated in the Step III response, the identifying number of this particular grievance was amended at Step III "to reflect the reason for the rejection." The Step III response goes on to state that Plaintiff's grievance was properly rejected on the merits at Steps I and II. This suggests that Plaintiff's grievance was not rejected for failure to comply with a procedural requirement, but was instead rejected on the merits. Because the evidence submitted by Defendants fails to make clear the basis for the rejection of this grievance, the Court finds that Defendants have failed to carry their burden of establishing that Plaintiff failed to properly exhaust this grievance.

However, the only claim asserted in this grievance is that Defendant Thomas refused to provide Plaintiff with notary services, thereby violating Plaintiff's First Amendment right of access to the courts. The Court recommends, therefore, that all the other claims in Plaintiff's complaint be dismissed for failure to properly exhaust administrative remedies. As for Plaintiff's claim that Defendant Thomas violated his right of access to the courts, the Court recommends that Defendant Thomas is nevertheless entitled to relief.

The First Amendment protects every inmate's right of access to the courts, however, this protection extends only to "direct appeals, habeas corpus applications, and civil rights claims." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (citing *Lewis v. Casey*, 518 U.S. 343, 355 (1996)). To state a claim for denial of access to the courts, a prisoner must allege that he suffered "an actual litigation related injury or legal prejudice because of the actions of the defendants." *Erdman v. Martin*, 52 Fed. Appx. 801, 803 (6th Cir., Dec. 12, 2002) (citing *Casey*, 518 U.S. at 349-51); *see also*, *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (to state a claim for denial of access to the courts, Plaintiff must allege that he suffered an "actual injury," such as "the late filing of a court document or

the dismissal of an otherwise meritorious claim"). Plaintiff has not alleged that he suffered any litigation related injury or legal prejudice as a result of Defendant Thomas' alleged conduct. Thus, he has failed to state a claim upon which relief may be granted. Accordingly, the Court recommends that this claim be dismissed.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion to Dismiss, (dkt. #17), be **granted** and Plaintiff's action be **dismissed**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                          Respectfully submitted,

Date: December 29, 2009                      /s/ Ellen S. Carmody
                                                        ELLEN S. CARMODY
                                                        United States Magistrate Judge